UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

v.                                                                   CASE NO. SA-22-CR-00209-JKP

**MARGARITO RODRIGUEZ, JR.**

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Margarito Rodriguez, Jr.'s Motion to Dismiss, pursuant to Federal Rule of Criminal Procedure 12, Count Three of the Indictment, charging violation of 18 U.S.C. § 924(c). *ECF No. 75*. The Government filed its Response on July 29, 2025. *ECF No. 77*. Defendant argues the Court should dismiss Count Three because it is unconstitutional, both facially and as applied to him, under the Second Amendment standard articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). *Id*. On August 4, 2025, the Court issued an Order denying Defendant's facial challenge. With this order, the Court now **DENIES** Defendant's as applied challenge.

BACKGROUND

The Government alleges Defendant, in February 2022, began communicating with a Drug Enforcement Administration ("DEA") undercover officer regarding the sale of methamphetamine. *ECF No. 77 at 1*. After several conversations, the undercover officer and Defendant agreed to meet so Defendant could count the money for the sale and for the officer to purportedly test the quality of the methamphetamine. *Id*. DEA agents observed Defendant leave his hotel and a Texas Department of Public Safety Trooper stopped Defendant for failure to maintain a single lane. *Id*. During the stop, the Trooper observed marijuana in the driver's side door and searched the vehicle.

1

*Id.* at 1–2. Defendant stated a gun was inside the vehicle in response to the Trooper's questions. *Id.* at 2. The Trooper also found a kilogram of methamphetamine inside of a black backpack behind the front passenger seat. *Id.* at 2. The Trooper also found a loaded handgun between the driver's seat and the center console. *Id.* at 2.

Agents obtained and executed a search warrant on Defendant's hotel room and discovered seven kilograms of methamphetamine. *Id.* at 2. Hotel cleaning staff contacted DEA agents regarding a firearm they found under a pillow in Defendant's hotel room. *Id.* at 2.

The DEA laboratory tested the methamphetamine and confirmed that 6,864 net grams of methamphetamine were retrieved with a 93% purity rate, resulting in 6,383 grams of pure methamphetamine. *Id.* at 2.

On May 4, 2022, the grand jury indicted Defendant of violating: (1) 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), conspiracy to possess with intent to distribute 500 grams or more of methamphetamine; (2) 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), possession with intent to distribute 500 grams or more of methamphetamine; and (3) 18 U.S.C § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking offense. *ECF No. 3*.

On July 16, 2025, the Court held a hearing to determine the status of the case. Defense counsel stated Defendant intended to plead guilty to Counts One and Two of the Indictment and proceed to a bench trial on Count Three. *ECF No. 70*. Defendant signed a waiver of right to jury trial for Count Three of the Indictment. *ECF No. 71*. The Court set Count Three for a bench trial on August 18, 2025. *ECF No. 72*.

On August 6, 2025, Defendant, pursuant to a plea agreement, pleaded guilty to Counts One and Two of the indictment.

The facts regarding the § 924(c)(1)(A) are now established and the Court can rule on Defendant's as applied challenge. The plea agreement contains a factual basis for Counts One and Two, which states

> Beginning in February of 2022, the defendant, Margarito RODRIGUEZ, jr., began communicating with an undercover officer working with the Drug Enforcement Administration regarding Methamphetamine that RODRIGUEZ had procured for other coconspirators for f-t1rther distribution in the San Antonio and Austin area. On March 28, 2022, RODRIGUEZ and the UC agreed to meet in New Braunfels, Texas, an area within the Western District of Texas, in order for RODRIGUEZ to sell 8 kilograms of methamphetamine to the UC for approximately $36,000. RODRIGUEZ contacted the UC on March 29, 2022 and informed the UC that he had rented a hotel room at the Best Western Inn and Suites, room #123, and was ready to complete the transaction. The UC requested that RODRIGUEZ bring a kilogram of the methamphetamine to a pickup location in order to count the money before exchange the 8 kilograms of methamphetamine for the $36,000.
>
> As RODRIGUEZ and another female were leaving the Hotel on IH-35 southbound, DPS Troopers effected a traffic stop on the vehicle RODRIGUEZ was driving. During the traffic stop Troopers recovered one kilogram of methamphetamine located in a black backpack inside the vehicle. Troopers also recovered a .45 caliber Springfield armory Sub-Compact semi-automatic handgun, serial number GM452750 between the driver's seat where RODRIGUEZ as seated and the center console.
>
> Agents then applied for and were granted a State Search warrant for room #123 at the Best Western Hotel, and during the search incident to the warrant recovered seven clear zip lock bags each containing approximately one kilogram of methamphetamine for a total of 7 additional kilograms of methamphetamine.
>
> The 8 kilograms of methamphetamine was sent to the DEA laboratory for chemical analysis which confirmed that there was 6383 grams of pure methamphetamine present.
>
> RODRIGUEZ now admits that beginning on or about January 28, 2022 and continuing through on or about March 29, 2022, he conspired with others to possess with intent to distribute a mixture or substance that contained 500 grams or more of methamphetamine in violation of Title 21 United States Code, Section 846, 841(a)(l) & (b)(l)(A). ***RODRIGUEZ also admits that during the commission of this drug***

3

> *trafficking offense, RODRIGUEZ knowingly carried and possessed a firearm: to wit the .45 Caliber Springfield armory Sub-Compact semi-automatic handgun, in furtherance of his drug trafficking offense.*

Plea Agreement at 3-4.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also, United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

## ANALYSIS

I. **Defendant's Challenges to 18 U.S.C. § 924(c)**

   A. **As Applied Challenge**

      1. **Plaint Text Analysis**

Defendant alleges 18 U.S.C § 924(c) ("§ 924(c)") is unconstitutional as applied to him. While the Fifth Circuit has not issued a post-*Bruen* opinion regarding the constitutionality of § 924(c), several district courts within the Fifth Circuit have issued post-*Bruen* opinions upholding the statute. Here, the Government alleges the conduct § 924(c) proscribes is not covered by the

plain text of the Second Amendment and even if the conduct is covered, the statute is constitutional because it is consistent with our nation's historical tradition of firearm regulation.

In *United States v. Reyes*, the district court examined the constitutionality of § 924(c). 677 F.Supp.3d 585 (2023). In *Reyes*, the defendant was charged with conspiracy to distribute and possess with the intent to distribute fentanyl and possession of a firearm in furtherance of drug trafficking. *Id.* at 588. Reyes filed a motion to quash the § 924(c) charge based on *Bruen*. *Id.* Reyes alleged he carried the firearm that was the subject of the § 924(c) for self-defense. *Id.*

The court, citing the Supreme Court's decision in *District of Columbia v. Heller*, recognized the "textual command of the Second Amendment does not protect the right of citizens to carry arms 'for *any sort* of confrontation.'" *Id.* at 591 (citing *Heller*, 554 U.S. 570, 595 (2008)). The Supreme Court explained, regarding the Second Amendment, it "understood the right to enable individuals to defend themselves" and that "permitting a citizen to 'repel force by force' when the 'intervention of society in his behalf, may be too late to prevent an injury.'" *Id.* (citing *Heller*, 554 U.S. at 594-595). The plain text of the Second Amendment protects the individual right of self-defense. *Id.*

> Concerning § 924(c), the *Reyes* Court stated
>
> Turning to the present case, to be convicted of violating 18 U.S.C. § 924(c), the Government must prove beyond a reasonable doubt that: (1) Defendant committed the predicate drug trafficking offense; and (2) Defendant, with the requisite *mens rea*, possessed the firearm "*in furtherance*" of the drug trafficking offense. 18 U.S.C. § 924(c)(1)(A). Following *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Congress amended 18 U.S.C. § 924(c) to include the "possession-in-furtherance" language. *See United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000), *amended on reh'g in part*, 226 F.3d 651 (5th Cir. 2000). The Fifth Circuit explained that Congress intended 18 U.S.C. § 924(c) to require more than the "mere presence" of the firearm—i.e., the "generality [that] anytime a drug dealer possess a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs." *Id.* at 414. The Fifth Circuit ultimately adopted the definition of "furtherance" as "[t]he act of furthering, advancing, or helping forward." *Id.* at 412, 415.

5

*Id*. at 591–592.

The statute requires the Government to present evidence which establishes that Defendant's possession of the firearm "actually furthered the drug trafficking offense." *Id*. at 592. *Heller* and *Bruen*'s reading of the Second Amendment's plain text anchored gun ownership to the natural right of self-preservation. By their own explication, these cases did not provide a right to go on the offensive. *Id*. at 592. For this reason, ultimately the *Reyes* Court determined the conduct proscribed under § 924(c) is not covered by the plain text of the Second Amendment. *Id*. This Court agrees with that conclusion.

This Court also agrees with the *Reyes* Court that even if the conduct proscribed under § 924(c) is covered by the plain text of the Second Amendment, "the Nation's history and tradition articulates a historical analogue to 18 U.S.C. § 924(c)." *Id*.; *see also Bruen*, 142 S.Ct. 2111 at 2143 ("[These statutes] merely codified the existing common-law offense of bearing arms to terrorize the people, as had the Statute of Northampton itself."). The Court also reviewed and agrees with the district court's decision in *United States v. Young*. 2024 WL 534955 (W.D. La. Feb. 9, 2024).

"It is axiomatic that a 'statute may be invalid as applied to one state of facts and yet valid as applied to another.'" *Reyes*, 677 F. Supp. 3d at 585 (citing *Ayotte v. Planned Parenthood of N. New England*, 126 S.Ct. 961, 967 (2006) (quoting *Dahnke-Walker Milling Co. v. Bondurant*, 42 S.Ct. 106 (1921))). Section 924(c) can be violated in one of two ways: "either (1) by using or carrying a firearm during and in relation to a drug-trafficking crime or crime of violence ***or (2) by possessing a firearm in furtherance of such a crime.***" *See* Fifth Circuit Criminal Pattern Jury

Instruction 2.44. (2024). Pattern Jury Instruction 2.44A applies to the use or carrying offense, and 2.44B applies to the possession offense.[1]

Based on Defendant's guilty plea and the factual basis in the plea agreement, the elements of the § 924(c) possession of a firearm in furtherance of a drug trafficking offense have been established. In considering Defendant's as-applied Second Amendment challenge, the Court (A) outlines the Supreme Court's *Bruen* framework; and then (B) surveys, through *Bruen's* lens, the potentially analogous historical firearm regulations proffered by the Government and considers whether § 924(c) 's application to Defendant is consistent with this Nation's historical tradition of firearm regulation.'" *United States v. Allam*, 140 F.4th 289, 294 (5th Cir. 2025) (citing *Bruen*, 597 U.S. at 17, 142 S.Ct. 2111) (cleaned up).[2]

### 2.     Historical Analysis

Although the Court does not find Defendant's conduct is covered by the plain text of the Second Amendment, the Court will still conduct *Bruen's* historical analysis to resolve the pending motion.

---

[1] Fifth Circuit Pattern Jury Instruction 2.44B states "Title 18, United States Code, Section 924(c)(1), makes it a crime for anyone to knowingly possess a firearm in furtherance of a federal drug-trafficking crime [crime of violence]. For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt: First: That the defendant committed the crime alleged in Count _____. I instruct you that _____ is a federal drug-trafficking crime [crime of violence]; and Second: That the defendant knowingly possessed a firearm, and that possession was in furtherance of the defendant's commission of the crime charged in Count _____. [Second: That the defendant aided and abetted _____ (name associate) in committing the drug-trafficking crime [crime of violence] alleged in Count ____, and knew in advance that _____ (name associate) would be armed.]. To prove the defendant possessed a firearm "in furtherance" of the drug-trafficking crime [crime of violence], the government must prove that the defendant's possession of the firearm furthered, advanced, or helped forward that crime."

[2] The Court understands the historical analysis regarding Defendant's as applied challenge is different than the approach for an as applied challenge to the felon in possession statute, which requires district courts to analyze a defendant's criminal history for predicate felony offenses and determine whether relevantly similar laws existed at or near the Nation's founding which permit disarming such individuals. See *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024), cert. denied, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025). "For the purposes of assessing Diaz's predicate offenses under § 922(g)(1), we may consider prior convictions that are "punishable by imprisonment for a term exceeding one year." See § 922(g)(1). Diaz's pertinent criminal history consists of vehicle theft, evading arrest, and possessing a firearm as a felon." *Id*. *Diaz* also prohibited district court's from considering other charges contained within the same indictment as the felon in possession charge as predicate offenses. *Id*. Here, the Court can consider the underlying drug trafficking offense because it is an element of the § 924(c)(1). *See* Footnote 1.

The second step requires a court to consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 26–31). The Court "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id*. (quoting *Bruen*, 597 U.S. at 29); *Allam*, 140 F.4th at 295. The *Bruen*/*Rahimi* methodological approach does not require the modern statute to be an exact match to its historical precursors. *Allam*, 140 F.4th at 295. The Court must determine whether the modern law "comport[s] with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin." *Id*. (citing *Bruen*, 597 U.S. at 30).[3] To accomplish this goal, the Court must focus on why and how the challenged law burdens the right. *Id*. The Court's analysis is also "driven by the concrete facts that properly underlie an as-applied challenge to a statute." *Id*. (citing *Justice v. Hosemann*, 771 F.3d 285, 295 (5th Cir. 2014)). Therefore, the Court will only consider the concrete facts detailed in the factual basis of the plea agreement.

The government contends the law proscribing possession of a firearm in furtherance of a drug trafficking offense is relevantly similar to "going armed" laws. *ECF No. 77 at 7–11*. The government argues § 924(c)(1) and going armed laws are part of the American historical tradition that permits legislatures to punish and disarm individuals who use firearms in a threatening manner. *Id*. The government also alleges colonial and founding era state laws provided enhanced punishments—death penalty or estate forfeiture—for certain felony offenses committed while

---

[3] Pepperdine University Law Professor Jacob Charles, in *The Dead Hand of a Silent Past: Bruen, Gun Rights, and the Shackles of History*, discusses the problem courts encounter when conducting their historical analysis of a modern firearms restriction when an analogue from the past does not exist to support the constitutionality of the modern law. Jacob Charles, *The Dead Hand of a Silent Past: Bruen, Gun Rights, and the Shackles of History*, 73 Duke L.J. 67 111-122 (2023). Professor Charles' article was written before the Supreme Court's opinion in *Rahimi* was issued, but his point regarding historical silence is still relevant. He stated, "[u]nder *Bruen's* test, it appears that if the government cannot point to past legal regulation (that is enacted laws), it cannot regulate it today." *Id.* at 111.

armed. *Id*. at 8. Lastly, the government states there is a tradition of disarming individuals who are deemed dangerous. *Id*. at 9–10.

### a. Why (the law was enacted)

Section 924(c) was enacted to address the problem of firearms used in connection with drug trafficking.

> This Court has described the statute's basic purpose broadly, as an effort to combat the "dangerous combination" of "drugs and guns." *Smith v. United States*, 508 U.S. 223, 240, 113 S.Ct. 2050, 2060, 124 L.Ed.2d 138 (1993). And the provision's chief legislative sponsor has said that the provision seeks "to persuade the man who is tempted to commit a Federal felony to leave his gun at home." 114 Cong.Rec. 22231 (1968) (Rep. Poff); *see Busic v. United States*, 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980) (describing Poff's comments as "crucial material" in interpreting the purpose of § 924(c)); *Simpson v. United States*, 435 U.S. 6, 13–14, 98 S.Ct. 909, 913–914, 55 L.Ed.2d 70 (1978) (concluding that Poff's comments are "clearly probative" and "certainly entitled to weight"); see also 114 Cong.Rec. 22243–22244 (statutes would apply to "the man who goes out taking a gun to commit a crime") (Rep. Hunt); id., at 22244 ("Of course, what we are trying to do by these penalties is to persuade the criminal to leave his gun at home") (Rep. Randall); id., at 22236 ("We are concerned ... with having the criminal leave his gun at home") (Rep. Meskill).

*Muscarello v. United States*, 524 U.S. 125, 132, (1998).

The Supreme Court recognized Congress was concerned about the problems associated with the combination of drugs and guns.

> Imposing a more restrictive reading of the phrase "uses ... a firearm" does violence not only to the structure and language of the statute, but to its purpose as well. ***When Congress enacted the current version of § 924(c)(1), it was no doubt aware that drugs and guns are a dangerous combination.*** In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent. The American Enterprise 100 (Jan.–Feb. 1991). The fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon. See supra, at 2059. We therefore see no reason why Congress would have intended courts and juries applying § 924(c)(1) to draw a fine metaphysical distinction between a gun's role in a drug offense as a weapon and its role as an item of barter; it creates a grave possibility of violence and death in either capacity.

*Smith v. United States*, 508 U.S. 223, 240 (1993).

### b.   How (the law burdens the right protected under the Second Amendment)

Section 924(c) creates an enhanced penalty when an individual is convicted of the offense.[4] The government points to various colonial and founding era statutes that increased punishment for certain felony offenses when arms or dangerous weapons were used. *ECF No. 77 at 8*.[5] *See also* 1783 Conn. Pub. Acts 633 (imposing enhanced penalties for committing burglary or robbery while armed, rather than unarmed); Laws Passed in the Territory of the United States North-West of the River Ohio from the Commencement of the Government to the 31st of December, 1791, at 19–20 (1792) (1788 statute imposing the same)[6]; Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, with the Constitutions of the United States of America, and of the Commonwealth, Prefixed 346 (1897) (1806 statute imposing the same). The Court concludes § 924(c)(1) is "consistent with the principles that underpin our regulatory tradition."

---

[4] 18 U.S.C.A. § 924(c)(1)(A) states "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, *or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--(i) be sentenced to a term of imprisonment of not less than 5 years.*"

[5] The government points to other laws from the mid nineteenth century to support its argument, but the Court is concerned that those laws may be too far removed from the colonial or founding era to consider under governing authority. *See ECF No. 77 at 9 n. 6*. The Court is also aware that it "must be careful not to read a principle at such a high level of generality that it waters down the right," *United States v. Rahimi*, 602 U.S. 680, 740 (2024) (Barrett, J., concurring).

[6] *The Laws of the Northwest Territory, 1788–1800*, Archive.org (Sep. 7, 2025, 5:00 PM), https://archive.org/details/lawsofnorthwestt17nort/page/14/mode/2up; *see also An Act for the Punishment of Burglary and Robbery, 1783 Conn. Acts 633, 633 (Timothy Green)*, Duke Center for Firearms Law (Sep. 7, 2025, 5:00 PM), https://firearmslaw.duke.edu/laws/1783-conn-acts-633-an-act-for-the-punishment-of-burglary-and-robbery; *An Act for the Punishment of Divers Capital and Other Felonies, § 4, 1787 Vt. Acts & Resolves (George Hough & Alden Spooner)*, Duke Center for Firearms Law (Sep. 7, 2025, 5:00 PM), https://firearmslaw.duke.edu/laws/an-act-for-the-punishment-of-divers-capital-and-other-felonies-4-1787-vt-acts-resolves-george-hough-alden-spooner-1787; An Act Providing for the Punishment of the Crimes of Burglary, and Other Breaking and Entering of Buildings, §§ 1-5, MASS. GEN. LAWS (Manning & Loring 1807) (Passed 1806), Duke Center for Firearms Law (Sep. 7, 2025, 5:00 PM), https://firearmslaw.duke.edu/laws/dd.

*Rahimi*, 602 U.S. at 692 (2024). Section 924(c)(1) is consistent with the nation's historical tradition of imposing enhanced penalties for felonies committed while armed. Violation of these historical laws resulted in capital punishment and/or estate forfeiture. The principle of imposing harsher punishments for armed felony offenses is firmly rooted in our regulatory tradition.[7]

## CONCLUSION

The Court finds § 924(c) is constitutional as applied to Defendant, and therefore, DENIES Defendant's § 924(c) as applied challenge.

It is so ORDERED.
SIGNED this 8th day of September, 2025.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE

---

[7] *United States v. Cash*, No. 22-2713, 2023 WL 6532644, at *4 n. 9 (3d Cir. Oct. 6, 2023) ("Judge Shwartz would hold there was no error, plain or otherwise, in allowing Cash's § 924(c) conviction to stand based both on the fact that Cash's conduct is not covered by the Second Amendment and, even if it was, there are relevantly similar historical regulations that demonstrate that § 924(c), as applied to Cash, is consistent with the Nation's tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2130; see, e.g., 1783 Conn. Pub. Acts 633 (imposing enhanced penalties for committing burglary or robbery while armed, rather than unarmed); Laws Passed in the Territory of the United States North-West of the River Ohio from the Commencement of the Government to the 31st of December, 1791, at 19-20 (1792) (1788 statute imposing the same); Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, with the Constitutions of the United States of America, and of the Commonwealth, Prefixed 346 (1897) (1806 statute imposing the same); *People v. Fellinger*, 24 How. Pr. 341, 342 (N.Y. Gen. Term 1892) (citing similar 1828 New York statute); State v. Tutt, 63 Mo. 595, 599 (1876) (citing similar 1835 Missouri statute). These laws and § 924(c) impose comparable burdens on the right to armed self-defense and are comparably justified. Taking justification first, both § 924(c) and these historical laws seek to address the risk of violence that arises when a firearm is present during the commission of certain crimes. As to burden, both address this problem through identical means—enhanced criminal penalties—and impose a comparably minimal burden on the "right of armed self-defense," *Bruen*, 142 S. Ct. at 2133, by punishing possession related to criminal behavior, rather than lawful self-defense. Thus, these historical laws demonstrate that § 924(c) falls within a historical tradition of enhanced penalties for possessing a firearm in furtherance of a crime. *See Alaniz*, 69 F.4th at 1129 (9th Cir. 2023) (reviewing similar historical laws and concluding U.S.S.G. § 2D1.1(b)(1) "comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence"). As a result, Cash's § 924(c) conviction does not violate the Second Amendment.").